d) directing such other and further relief as the Court may deem just and proper, together with attorney fees, interest, costs and disbursements of this action.

### Jury Trial Demand

Plaintiff J.G. Wentworth hereby demands a trial by jury of this action.

Dated:                      RICHARD M. OCHROCH & ASSOCIATES, P.C.

                                _____
                                Richard M. Ochroch, Esq.
                                James J. Waldenberger, Esq.
                                318 S. Sixteenth Street
                                Philadelphia, PA 19102
                                (215) 735-2707

                                ABELMAN, FRAYNE & SCHWAB
                                Jeffrey A. Schwab
                                Richard L. Crisona
                                666 Third Avenue
                                New York, New York 10017
                                (212) 949-9022

                                Attorneys for Plaintiff J.G. Wentworth
                                S.S.C. Limited Partnership

**WHEREFORE**, J.G. Wentworth demands entry of a judgment against Peachtree as follows:

a) granting an injunction permanently enjoining and restraining Peachtree, its officers, directors, principals, agents, servants, employees, partners, subcontractors, subsidiaries and related companies or entities, suppliers, successors and assigns, and all those in active concert and participation with it, from:

i) directly or indirectly buying, offering to buy, bidding on or in any way otherwise using advertising keywords that are identical or substantially similar to J.G. Wentworth's trademarks, which are likely to cause consumer confusion, mistake, or deception with respect to J.G. Wentworth's marks;

ii) engaging in any activity constituting unfair competition with J.G. Wentworth, constituting infringement of J.G. Wentworth's "J.G. Wentworth" trademarks, or constituting any dilution of the good will, name or reputation of J.G. Wentworth or its "J.G. Wentworth" trademark; and

iii) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to herein.

b) directing Peachtree to account to J.G. Wentworth for actual damages suffered by it, including lost sales, as a result of the infringement of J.G. Wentworth's trademark, directing that such damages be trebled because of the willful and deliberate nature and character of the infringement, together with an assessment of interest, and awarding J.G. Wentworth judgment in that amount against Peachtree;

c) directing Peachtree to account to J.G. Wentworth for Peachtree's unjustly received profits resulting from the foregoing infringements;

14

## FOURTH CAUSE OF ACTION
### Injury to Business Reputation and Dilution

47. J.G. Wentworth incorporates by reference every allegation contained in paragraphs 1 through 46 as if here fully set forth.

48. The unauthorized use by Peachtree of J.G. Wentworth's registered marks in connection with its purchase of keywords in Google's AdWords program will dilute or tarnish J.G. Wentworth's business reputation and/or the effectiveness of the well-known, famous and distinctive J.G. Wentworth Marks.

49. Peachtree's acts constitute dilution and injury to J.G. Wentworth's business reputation in violation of Pennsylvania law.

50. Peachtree's acts have caused and, unless these acts are restrained by this Court, will continue to cause J.G. Wentworth to suffer irreparable injury.

51. J.G. Wentworth has no adequate remedy at law.

## FIFTH CAUSE OF ACTION
### Common Law - Trademark Infringement and Unfair Competition

52. J.G. Wentworth incorporates by reference every allegation contained in paragraphs 1 through 51 as if here fully set forth.

53. Peachtree's acts constitute trademark infringement and unfair competition in violation of J.G. Wentworth's rights under the common law of the Commonwealth of Pennsylvania.

54. Peachtree's acts have caused and, unless these acts are restrained by this Court, will continue to cause J.G. Wentworth to suffer irreparable injury.

55. J.G. Wentworth has no adequate remedy at law.

that Peachtree, or its products, are approved by, sponsored by or are somehow affiliated or connected with J.G. Wentworth.

39. Peachtree's acts, namely, the use of J.G. Wentworth's trademarks in connection with its purchase of keywords in Google's AdWords program constitutes a false designation of origin and false description and representation, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

40. Peachtree's acts have caused and, unless these acts are restrained by this Court, will continue to cause, J.G. Wentworth to suffer irreparable injury.

41. J.G. Wentworth has no adequate remedy at law.

### THIRD CAUSE OF ACTION
Lanham Act – Dilution

42. J.G. Wentworth incorporates by reference every allegation contained in paragraphs 1 through 41 as if here fully set forth.

43. Use by Peachtree of J.G. Wentworth's marks in connection with its purchase of keywords in Google's AdWords program has lessened and will continue to lessen the capacity of J.G. Wentworth's famous and distinctive marks to distinguish J.G. Wentworth's products and services from those of others, and has diluted the distinctive quality of J.G. Wentworth's famous and distinctive marks.

44. Peachtree's acts constitute dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

45. Peachtree's acts have caused and, unless these acts are restrained by this Court, will continue to cause, J.G. Wentworth to suffer irreparable injury.

46. J.G. Wentworth has no adequate remedy at law.

## FIRST CAUSE OF ACTION
### Lanham Act - Trademark Infringement

32. J.G. Wentworth incorporates by reference every allegation contained in paragraphs 1 through 31 as if here fully set forth.

33. Peachtree's unauthorized, willful use of J.G. Wentworth's registered marks in connection with its purchase of keywords in Google's AdWords program constitutes use in commerce which infringes J.G. Wentworth's exclusive rights in its federally-registered marks and is likely to cause confusion, mistake or deception as to the source of the services advertised by Peachtree.

34. Peachtree's acts, namely, the unauthorized, willful use of J.G. Wentworth's registered marks in connection with its purchase of keywords in Google's AdWords program, constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

35. Peachtree's acts have caused and, unless these acts are restrained by this Court, will continue to cause, J.G. Wentworth to suffer irreparable injury.

36. J.G. Wentworth has no adequate remedy at law.

## SECOND CAUSE OF ACTION
### Lanham Act - False Representation

37. J.G. Wentworth incorporates by reference every allegation contained in paragraphs 1 through 36 as if here fully set forth.

38. Use by Peachtree of J.G. Wentworth's marks in connection with its purchase of keywords in Google's AdWords program conveys the misleading commercial impression to the public

11

believing falsely that Peachtree's own website is sponsored or authorized by and/or originating with J.G. Wentworth.  Peachtree's actions also dilute the ability of the J.G. Wentworth's trademarks to identify J.G. Wentworth as a source of its products and services.

28. Peachtree's actions steal customers from J.G. Wentworth's website, erode the distinctiveness of J.G. Wentworth's marks, and impair J.G. Wentworth's honest and good faith efforts to promote and sell its products on the Internet.  Peachtree's actions have caused damage and irreparable injury to J.G. Wentworth.  Further damage and irreparable injury will result if Peachtree is allowed to continue to violate J.G. Wentworth's rights.

29. In addition to harming J.G. Wentworth's reputation and the value of its marks, Peachtree has realized and continues to realize profits and other benefits rightfully belonging to J.G. Wentworth.

30. Peachtree repeatedly has ignored J.G. Wentworth's demands to cease all unauthorized use of J.G. Wentworth's trademarks in its keyword Internet advertising on Google.  Indeed, although Peachtree stops its infringement now and then in response to J.G. Wentworth's complaints, Peachtree nevertheless always returns to it.

31. Peachtree's repeated failure to comply with J.G. Wentworth's demands shows its intent to continue to wrongfully compete with, infringe upon and dilute J.G. Wentworth's proprietary rights in the J.G. Wentworth trademarks.  J.G. Wentworth seeks an injunction to halt Peachtree's wrongful conduct and award of damages as well as attorneys' fees and expenses for Peachtree's willful and wanton conduct.

use." So even though Google – by actively facilitating Peachtree's infringement – also bears responsibility for it, Peachtree itself remains liable for its deliberate decision to purchase J.G. Wentworth's trademarks to use as keywords in Google's AdWords program.

Peachtree's Infringement

24. Peachtree obviously has purchased J.G. Wentworth's trademarks as its keywords for use in Google's AdWords program. If a user enters either "J.G. Wentworth" or "JG Wentworth" as a search phrase in Google, Peachtree's ad appears immediately alongside the link to J.G. Wentworth's website in the search results. This could only happen if Peachtree were using J.G. Wentworth's trademarks as its keywords.

25. And the fact that Peachtree's ad occupies the topmost position next to the link for J.G. Wentworth's website in the search results shows, according to Google's own literature, that Peachtree is both willing to pay a relatively high price for the ad, and that the ad must have a relatively high clickthrough rate.

The Harm to J.G. Wentworth

26. J.G. Wentworth has not given Peachtree permission to use its trademarks for the promotion or sale of its own products and services. Through its purchase of the J.G. Wentworth marks as keywords, Peachtree seeks to exploit the hard-earned goodwill of J.G. Wentworth and of its products and services. Peachtree's purchase of J.G. Wentworth's trademarks for use in the AdWords program is intended to divert consumers from the website that they intend to visit - *e.g.,* the J.G. Wentworth website - to its own website. Thus, Peachtree is free-riding on the goodwill and reputation of J.G. Wentworth.

27. By taking steps to ensure that its ad appears immediately alongside the link for J.G. Wentworth's website, Peachtree's actions are inherently deceptive and mislead consumers into

-- "No one can lock in the top position [in the display results]. User clickthrough rates and CPC [cost-per-click pricing] help determine where your ad is shown. The most relevant ads rise to the top." Similarly, "[r]ank is determined by a combination of several relevance factors including CPC and clickthrough rate. If an ad is irrelevant to users, they won't click on it and it will move down the page. Your relevant ads will gain higher positions on the page, at no extra cost to you." Or again, "[y]our keyword-targeted ad's position is determined by your ad's maximum cost-per-click (CPC) and Quality Score. Increasing performance factors such as your maximum CPC and/or Quality Score will improve your ad's position." In other words, if Peachtree were not diverting J.G. Wentworth's customers with a relatively high clickthrough rate for its ad, its ad would not remain immediately alongside the link to J.G. Wentworth's website on the search results page.

-- "AdWords Discounter takes care of your campaign for you, dynamically raising and lowering your CPC within range you specify to keep you in the position you want." In other words, Peachtree can – and evidently does – pay more to ensure that its ad is placed immediately alongside the link to J.G. Wentworth's website in order to ensure the maximum diversion of customers.

-- "General keywords will generate the most impressions, but will often result in the fewest number of clicks." In other words, Peachtree is being instructed not to use general keywords, such as "structured settlement," but more specific ones – such as the J.G. Wentworth trademarks.

23. Google's trademark policy for its AdWords program specifically notes that "the advertisers themselves are responsible for the keywords and ad content that they choose to

8

20. By simply using Google's search engine, Internet users are identifying to Google the subjects they are interested in, the companies they are looking for, or the goods and services they wish to buy. This allows Google to earn an overwhelming percentage of its revenue from the sale of contextual advertising, which permits companies to place their advertising in front of consumers who have already identified themselves as interested in products or services similar to theirs.

21. To accomplish this, Google offers a keyword-triggered advertising program called "AdWords." AdWords enables advertisers to purchase or bid on certain keywords. Then, when an Internet user enters those keywords in Google's search engine, the program generates links, known as "Sponsored Links," to the advertisers' websites. Sponsored links appear at the top and on the margins of Google's search-results pages. In many instances, the search results pages are designed so that the "Sponsored Link"' display is inconspicuous, confusing and ambiguous in that it is not apparent who "sponsors" these links, and whether a sponsor of the link is associated in any way with the company that is the subject of the search. Whenever an Internet user clicks on a Sponsored Link, the corresponding advertiser must pay Google.

22. Google's own materials reveal the purpose of its AdWords program, and of the ability of users of the program, such as Peachtree, to trade on the goodwill of its competitors. For example, according to Google's materials about its AdWords program:

-- "Find buyers searching for what you sell. Google AdWords ads connect you with new customers at the precise moment when they're looking for your products or services." In other words, Peachtree uses the AdWords program to find buyers looking for its services by using J.G. Wentworth's trademarks to identify these buyers at the "precise moment" they are searching for J.G. Wentworth.

7

Peachtree has used other advertisements as well in its infringing participation in the AdWords program.

17. J.G. Wentworth had demanded of Peachtree that it cease its infringing use of J.G. Wentworth's marks, but Peachtree has refused, necessitating this lawsuit.  Peachtree has from time to time stopped its infringing activity for a brief while, or at least claimed that it would do so, but it keeps returning to it.  That Peachtree periodically stops its infringements shows its own guilty knowledge about the wrongfulness of its conduct; that it returns to the activity shows that it is effective in usurping customers from J.G. Wentworth.

Facts Common to All Claims for Relief

The Google Search Engine

18. The Internet is a global network of millions of connected computers which, over the last ten to fifteen years, has revolutionized how individuals and businesses operate and communicate.  The World Wide Web or "web" is a portion of the Internet which is designed to display information visually on "websites."  A website is located and identified by its "domain name," which is the name of the website, followed by a designator such as .com, .org, .biz, etc.

19. Google operates an Internet search engine, which allows Internet users to locate websites that match the "keywords," or search terms, they enter.  A search engine uses algorithms to process the keywords and produce a search-results page that displays links to the websites in the search engine's database that match the keywords.   Links to the websites usually are displayed in order of decreasing relevance, with the most relevant websites listed first. Google's search engine processes hundreds of millions of searches daily and covers billions of web pages.

Through its multi-million dollar television advertising and other extensive promotional efforts, including its Internet websites, J.G. Wentworth has ensured that its marks have become famous in the industry, and with the consuming public.

14. J.G. Wentworth maintains Internet websites at www.jgwfunding.com and www.jgwentworth.com as a further – and critical means – of promoting its services. Its television advertising and promotional activities are intended to work in tandem with its internet websites, so that potential customers who learn of J.G. Wentworth through its television advertising and other promotional activities can quickly and conveniently gain additional information about J.G. Wentworth through the Internet websites, as well as contact J.G. Wentworth for still more information and to begin forming a customer relationship with J.G. Wentworth by requesting a quote.

Peachtree

15. Peachtree, a Georgia limited liability company headquartered in Florida, is J.G. Wentworth's next nearest competitor in the advance funding of structured settlements. Peachtree operates an Internet website at www.settlementfunders.com. Through its participation in Google's AdWords program and infringing use of J.G. Wentworth's famous trademarks, Peachtree arranges to have an advertisement and link for its website displayed immediately alongside the link to J.G. Wentworth's website in the list of Google search results for "J.G. Wentworth" or "JG Wentworth."

16. Peachtree's current advertisement that appears alongside the link to J.G. Wentworth's website reads: "Peachtree Official Site – Specialists in Annuity & Settlement Funding. Request a Quote Online! www.settlementfunders.com." Discovery may show that

Wentworth is the only company in the industry to achieve AAA ratings by both Moody's and S&P financial rating services.

10. With close to $2 billion in total assets backing annuities and structured settlements in the United States today, J.G. Wentworth is the largest finance company in the nation specializing in turning future payments from structured settlements, annuities, real estate notes and other assets into immediate cash.  J.G Wentworth's mission is to create a free flow of capital for individuals who need to access the capital markets by exchanging some or all of their structured settlement or annuity for immediate cash payment.

11. Many times, people who have suffered damages are compensated for their losses through a settlement that provides a series of periodic cash payments. Just as often, circumstances change. Individuals need a lump sum for education, to start a business or for unexpected expenses. In situations such as these, individuals can access the value of their settlement by selling all or a portion of the future payments for their present value.  Legislation in 43 states permits the assignment of structured settlements after a judge's approval. J.G. Wentworth was instrumental in the development of this legislation through extensive lobbying and cooperation with state attorneys general, consumer groups and the insurance industry.

12. J.G. Wentworth is the owner of numerous registered trademarks, including U.S. Trademark Reg. No. 2,142,341 for the word mark "J.G. Wentworth" for investment consultation and planning services and U.S. Trademark Reg. No. 2,142,349 for the word mark in stylized form "J.G. Wentworth" for investment consultation and financial planning services.

13. J.G. Wentworth engages in extensive advertising of its services as a means of promoting its products and establishing its goodwill.  Since its founding, J.G. Wentworth has spent tens of millions of dollars in television advertising and other promotional activities.

the participant is willing to pay to use its competitor's trademarks and on how many Internet users actually "clickthrough" to the website link of the participant. So the fact that Peachtree's link appears immediately alongside J.G. Wentworth's link shows both that Peachtree is willing to pay a relatively high price to usurp J.G. Wentworth's goodwill, and that it is successful in doing so because it presumably must have a relatively high "clickthrough" rate to remain in a top spot.

6. J.G. Wentworth's website is a critical part of its marketing of its services. The harm to J.G. Wentworth's goodwill through Peachtree's infringement is thus extensive and irreparable.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1338 and §§ 1367.

8. Venue is proper in this District pursuant to 28 U.S.C.§§ 1391(b) and (c), in that Peachtree's infringement has occurred in this District and Peachtree resides in this district.

## THE PARTIES

J.G. Wentworth

9. J.G. Wentworth, a Nevada limited partnership headquartered in Pennsylvania, is the undisputed leader in the structured settlement industry. J.G. Wentworth was founded in 1992 with the idea that people with deferred payments, who previously had no way to raise money from their guaranteed future payments, should be able to get immediate cash for their future payments. J.G. Wentworth was the original pioneer and founder of the advanced funding industry and has maintained its position as the industry leader for over ten years. J.G.

3

interest piqued by J.G. Wentworth's extensive television advertising, Peachtree pays a fee to Google to use J.G. Wentworth's marks, and thus ensures that an advertisement and link to its website will be displayed alongside the link to J.G. Wentworth's website – the finding of which was the original goal of the searcher.  Peachtree participates in the AdWords program, and uses J.G. Wentworth's marks, in order to trade on J.G. Wentworth's goodwill, to cause consumer confusion and to divert users away from J.G. Wentworth's website to Peachtree's website.

3.  There is nothing subtle about Peachtree's infringement.  There is no legitimate reason for Peachtree to use J.G. Wentworth's marks to ensure that an advertisement for its services and a link to its website appears alongside the link to J.G. Wentworth's website in response to a search *for J.G. Wentworth* other than to divert for itself consumers who are interested in *and actively seeking out* J.G. Wentworth.

4.  Peachtree's bad faith in participating in the AdWords program is also shown by its conduct in response to J.G. Wentworth's complaints to Peachtree about Peachtree's trading on J.G. Wentworth's goodwill.  At various times when J.G. Wentworth has complained to Peachtree about Peachtree's participation in the AdWords program at J.G. Wentworth's expense, Peachtree has either agreed to stop doing so and then nevertheless continued the infringing conduct, or at other times, it halted its infringing use of J.G. Wentworth's trademarks and then resumed the conduct after a short time, presumably because it was effective in unfairly competing against J.G. Wentworth.

5.  Indeed, there can be little doubt that Peachtree's effort to divert traffic away from J.G. Wentworth's website to its own website is succeeding, to J.G. Wentworth's detriment.  Google's own materials about its AdWords program state that the displayed position of the ad and website link of a program participant, such as Peachtree, depends both on the amount that

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.G. WENTWORTH S.S.C. LIMITED PARTNERSHIP,<br><br>                        *Plaintiff*,<br><br>-against-<br><br>SETTLEMENT FUNDING, LLC d/b/a PEACHTREE SETTLEMENT FUNDING,<br><br>                        *Defendant.* | Civil Action No. _____<br><br>**Jury Trial Demanded** |

**COMPLAINT**

Plaintiff J.G. Wentworth S.S.C. Limited Partnership ("J.G. Wentworth"), by its undersigned attorneys, states for its Complaint against Settlement Funding, LLC d/b/a Peachtree Settlement Funding ("Peachtree"), upon knowledge with respect to its own acts and upon information and belief with respect to all other matters, as follows:

      1. This is an action for statutory and common law trademark infringement, false representation and dilution arising from Peachtree's trading on J.G. Wentworth's goodwill through its participation in the "AdWords" program offered by Google Inc. ("Google") in its provision of Internet search engine services. Through its participation in the AdWords program, Peachtree purchases the right to have an advertisement and link to its Internet website displayed immediately alongside a link to J.G. Wentworth's website whenever a Google user searches the terms "J.G. Wentworth" and "JG Wentworth."

      2. Peachtree secures the right to have an advertisement and link to its website displayed immediately alongside a link to J.G. Wentworth's website by purchasing the use of J.G. Wentworth's famous "J.G. Wentworth" trademarks. Whenever an Internet searcher on Google enters one of J.G. Wentworth's famous "J.G. Wentworth" marks, perhaps as a result of