IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

J.G. WENTWORTH, S.S.C. LIMITED :      CIVIL ACTION
PARTNERSHIP        :
             :
   v.          :
             :
SETTLEMENT FUNDING LLC d/b/a  :
PEACHTREE SETTLEMENT FUNDING :      NO. 06-0597

O'NEILL, J.               JAN. 4, 2007

MEMORANDUM

On April 10, 2006, plaintiff J.G. Wentworth filed an amended complaint against

defendant Peachtree Settlement Funding alleging that defendant engaged in acts of trademark

infringement, false representation, trademark dilution, and injury to business reputation in

violation of Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a)

(2006).  Plaintiff also asserts Pennsylvania state law claims of trademark infringement and unfair

competition.[1]  Before me now is defendant's motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6), plaintiff's response, and defendant's reply thereto.

---

[1]I note that "[t]he test for common law trademark infringement and unfair competition is
essentially the same as the test for infringement and unfair competition under the Lanham Act."
Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc., 94 F. Supp. 2d 566, 580 (E.D. Pa. 1999); see
also Bijur Lubricating Corp. v. Devco Corp., 332 F. Supp. 2d 722, 727 (D.N.J. 2004) ("[I]n the
Third Circuit the test for common law infringement and unfair competition is identical to the test
for federal infringement and unfair competition.") (citations omitted).  The sole distinction
between the federal and state analyses is that the federal claims require an effect on interstate
commerce.  See Scott Fetzer Co. v. Gehring, 288 F. Supp. 2d 696, 703 (E.D. Pa. 2003).  Pursuant
to established law, the following analysis applies to both the federal and state law claims at issue
in this case.

## BACKGROUND

### I.      Parties and Claims

Plaintiff, a Nevada limited partnership headquartered in Pennsylvania, is a finance company that specializes in providing immediate cash payments in exchange for the rights to future payments from structured settlements, annuities, real estate notes and other assets. Plaintiff regards itself as the undisputed leader in the structured settlement industry and alleges that its registered trademarks for its name and its stylized printing of its name have achieved recognition among the industry and consuming public as a result of extensive promotional efforts, including advertising on television and the internet.  Plaintiff alleges that it maintains internet websites at www.jgwfunding.com and www.jgwentworth.com as a critical means of promoting its services and for the benefit of potential consumers.

Defendant, a Georgia limited liability company headquartered in Florida, is a finance company that specializes in providing immediate cash payments in exchange for the rights to future payments from structured settlements and annuities.  According to plaintiff, defendant is plaintiff's next nearest competitor in the settlement fund industry.  Defendant maintains internet websites at www.settlementfunders.com, www.settlementfunding.com, and www.peachtreesettlementfunding.com.

Plaintiff's claims arise from defendant's alleged use of plaintiff's trademarks in two ways: (1) through Google's AdWords program; and (2) in the "meta tags" for defendant's website.  Plaintiff alleges that these uses of plaintiff's name ensures that a link to defendant's website will appear immediately proximate to a link to defendant's website when individuals

2

conduct internet searches for "J.G. Wentworth" or "JG Wentworth."

II.     Google's AdWords Program

_____Among other services, Google provides an internet search engine that finds websites related to terms provided by internet users.  An internet user seeking information will enter various terms into a space provided on Google's website, and Google's computers will search its database for websites relevant to the terms provided.  The Google search engine then will present an ordered list of relevant websites identified by the Google database with the most relevant website listed first.  The Google search engine will also present a separate list of websites in a "Sponsored Links" section, either at the top or in the right margin of the search-results screen.

Google's AdWords program is the keyword-triggered advertising program that generates the Sponsored Links section on the search-results screen.  Advertisers participating in AdWords purchase or bid on certain keywords, paying Google for the right to have links to their websites displayed in the Sponsored Links section whenever an internet user searches for those words.  Additionally, each time an internet user clicks on a particular Sponsored Link, Google charges a fee to the AdWords participant associated with that linked website.  Businesses often participate in the AdWords program to generate more visits to their websites.

Plaintiff alleges that defendant infringes on plaintiff's mark through Google's AdWords program by using the terms "J.G. Wentworth" or "JG Wentworth" as its keywords so that an internet search for those terms produces a Sponsored Link to defendant's website immediately proximate to the link to plaintiff's website on the search-results screen.  Plaintiff maintains that defendant's participation in Google's AdWords program further infringes upon plaintiff's mark

because at least eight different websites use the Google database and thus produce links to

defendant's website in response to searches for "J.G. Wentworth" or "JG Wentworth."

The links to defendant's website at issue always appear as independent and distinct links

on the search result pages, and plaintiff does not allege that defendant's advertisements and links

incorporate plaintiff's marks in any way.

III.     Meta Tags

Plaintiff further alleges that defendant has inserted plaintiff's marks into its keyword meta

tags for its website.  "Meta tags" are pieces of the Hyper Text Markup Language ("HTML")

source code which contain keywords used to describe the contents of a web page.  There are

three types of meta tags: (1) descriptive meta tags, which describe the content of the document;

(2) keyword meta tags, which are used by internet search engines to help determine whether a

particular web page is relevant to a search term entered by a user; and (3) robot meta tags, which

indicate to search engines that certain web pages are not to be indexed by the search engine.

Meta tags are invisible to Internet users but are used by search engines to index websites.  Upon

indexing relevant websites, a search engine uses algorithms to process the keywords in the meta

tags to produce a search results page that displays links to relevant websites in a list typically in

order of decreasing relevance.

Plaintiff alleges that defendant uses plaintiff's marks in its keyword meta tags for

fourteen different web pages on defendant's website.  Plaintiff asserts that this alleged use

infringes upon its mark and causes search engines to include a link to defendant's website on the

search results page when users search the Internet for "J.G. Wentworth" or "JG Wentworth."

Plaintiff contends that defendant infringes upon plaintiff's mark because a link to defendant's website appears in response to searches on ten internet search engines that have no relationship with Google.

IV.     Harm to J.G. Wentworth

Plaintiff asserts that defendant's alleged uses of plaintiff's marks through the AdWords program and in keyword meta tags constitute infringing acts that are intended to confuse consumers and to divert potential consumers away from plaintiff's website.  Plaintiff contends that by using plaintiff's marks in these ways defendant steals plaintiff's potential customers and erodes the distinctiveness of plaintiff's marks, thus causing a significant loss of profits to plaintiff.  Plaintiff further alleges that defendant intermittently complies with plaintiff's demands to cease all use of its marks, and this compliance evinces a practice of knowing infringement on the part of defendant.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2006). In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, the plaintiff[] may be entitled to relief." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted).  Nevertheless, in evaluating plaintiff's pleadings I will not credit any "bald assertions."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).  Nor will I accept as true legal conclusions or

unwarranted factual inferences.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  "The complaint

will be deemed to have alleged sufficient facts if it adequately put the defendant on notice of the

essential elements of the plaintiff['s] cause of action."  Nami, 82 F.3d at 65.  "It is black-letter

law that [a] motion to dismiss for failure to state a claim . . . is to be evaluated only on the

pleadings."  Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 257 (3d Cir. 2004) citing A.D.

Bedell Wholesale Co. v. Philip Morris, Inc., 263 F.3d 239, 266 (3d Cir. 2001).  When

considering a Rule 12(b)(6) motion, I do not "inquire whether the plaintiff[] will ultimately

prevail, only whether [he is] entitled to offer evidence to support [his] claims."  Nami, 82 F.3d at

65 citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Thus, a Rule 12(b)(6) motion may be

granted "only if it appears that the plaintiff[] could prove no set of facts that would entitle [him]

to relief."  Id. citing Conley v. Gibson, 355 U.S. 41 (1957).

DISCUSSION

In order to establish violations of either Section 32(1) or Section 43(a) of the Lanham

Act,[2] plaintiff must demonstrate: "(1) the mark is valid and legally protectable; (2) the mark is

---

[2]Section 32(1) of the Lanham Act states:

(1) Any person who shall, without the consent of the registrant–

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of
a registered mark in connection with the sale, offering for sale, distribution, or
advertising of any goods or services on or in connection with which such use is
likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply
such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints,
packages, wrappers, receptacles or advertisements intended to be used in
commerce upon or in connection with the sale, offering for sale, distribution, or

owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services." Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472 (3d Cir. 1994).

In the present motion, defendant asserts that plaintiff cannot meet the third element of a

---

     advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

     shall be liable in a civil action by the registrant for the remedies hereinafter provided.  Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1).

     Section 43(a) of the Lanham Act states:

     (a) Civil action

     (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–

     (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

     (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

     shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

7

trademark infringement and unfair competition claim.  Specifically, defendant argues that: (1) plaintiff cannot demonstrate that defendant made use of plaintiff's marks to identify the source of goods or services, and (2) no likelihood of confusion exists as a matter of law.  I find that defendant made trademark use of plaintiff's marks, but because this use creates no likelihood of confusion as a matter of law I will grant defendant's motion to dismiss.

I.      Trademark Use

        The first issue presented here is whether purchase and use of a trademark-protected keyword for the purpose of triggering internet advertising constitutes the type of "use in commerce" contemplated by the Lanham Act.  Defendant, in its motion to dismiss, cites numerous cases from other circuits for the general proposition that "[t]here can be no liability under the Lanham Act absent the use of a trademark in a way that identifies the products and services being advertised by the defendant."  Wells Fargo & Co. v. WhenU.com, Inc., 293 F. Supp. 2d 734, 757 (E.D. Mich. 2003).  Pursuant to this proposition, defendant argues that plaintiff fails to state a claim because defendant's alleged uses of plaintiff's marks in this case through Google's AdWords program and in keyword meta tags in no way identify the source of the goods and services, as the alleged uses of the plaintiff's marks are confined to source code unpublished to potential consumers.  Defendant asserts that this "pure machine-linking function," U-Haul Int'l, Inc. v. WhenU.com, Inc., 279 F. Supp. 2d 723, 725-26 (E.D. Va. 2003), is a "non-trademark way of using another's mark – that is, [] a way that does not identify the source of a product," analogous to drug manufacturers' practices of purchasing rights to place its generic products next to name brand competitors' products on a drug store shelf.  Motion to Dismiss of

Defendant at 9-10 (internal quotation marks omitted) quoting Interactive Prods. Corp. v. a2z

Mobile Office Solutions, Inc., 326 F.3d 687, 695 (6th Cir. 2003).

      The United States District Court for the District of New Jersey recently faced this precise

question as it pertains to Google's AdWords program.  See Buying for the Home, LLC v.

Humble Abode, LLC, 2006 WL 3000459 (D.N.J. Oct. 20, 2006).  As is alleged here, defendant

in Buying for the Home purchased search terms through Google's AdWords program, including

plaintiff's marks, to generate Sponsored Links.  Id. at *7.  The Court first acknowledged that

"[t]he Third Circuit has not spoken on the issue of whether the purchase and/or sale of keywords

that trigger advertising constitutes the type of 'use' contemplated by the Lanham Act, and

decisions from other courts that have addressed the issue are conflicting."  Id. at *6.  While

recognizing that participation in Google's AdWords program "is certainly not a traditional 'use

in commerce'" under prior applications of the Lanham Act, in the context of this new technology

the Court held that such acts satisfy the Lanham Act's "use" requirement.  Id. at *8.  The Court

reasoned:

> First, the alleged purchase of the keyword was a commercial transaction that
> occurred "in commerce," trading on the value of Plaintiff's mark.  Second,
> Defendants' alleged use was both "in commerce" and "in connection with any
> goods or services" in that Plaintiff's mark was allegedly used to trigger
> commercial advertising which included a link to Defendants' furniture retailing
> website. Therefore, not only was the alleged use of Plaintiff's mark tied to the
> promotion of Defendants' good and retail services, but the mark was used to
> provide a computer user with direct access (i.e., a link) to Defendants' website
> through which the user could make furniture purchases.  The Court finds that
> these allegations clearly satisfy the Lanham Act's "use" requirement.

Id.

      This reasoning contradicts the analyses of the cases cited by defendant, including a

9

recent opinion by the United States Court of Appeals for the Second Circuit which stated:

> A company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to an individual's private thoughts about a trademark. Such conduct simply does not violate the Lanham Act, which is concerned with the use of trademarks in connection with the sale of goods or services in a manner likely to lead to consumer confusion as to the source of such goods or services.

1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 409 (2d Cir. 2005) (holding that

defendant's inclusion of plaintiff's website address, www.1800contacts.com, in its own website's

directory did not infringe on plaintiff's similar 1-800CONTACTS trademark because defendant

never "place[d] 1-800 trademarks on any goods or services in order to pass them off as

emanating from or authorized by 1-800" (internal quotation marks omitted)).

    It is important to note that none of the WhenU.com line of cases cited by defendant[3]

involve the purchase of specified keywords as is the practice of defendant via Google's AdWords

program.  See 1-800 Contacts, 414 F.3d at 411 ("WhenU does not 'sell' keyword trademarks to

its customers or otherwise manipulate which category-related advertisement will pop up in

response to any particular terms on the internal directory.").  Further, I must disagree with

defendant's assertion that the Second Circuit did not find relevant a distinction between use of a

public domain address in defendant's database and use of the trademark itself.  In 1-800

Contacts, the Second Circuit expressly stated:

> The district court found that the differences between 1-800's trademarks and the website address utilized by WhenU were insignificant . . . . We conclude that, to

---

    [3]1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400 (2d Cir. 2005); Wells Fargo & Co. v. WhenU.com, Inc., 293 F. Supp. 2d 734 (E.D. Mich. 2003); U-Haul Int'l, Inc. v. WhenU.com, Inc., 279 F. Supp. 2d 723 (E.D. Va. 2003).

the contrary, the differences between the marks are quite significant because they transform 1-800's trademark – which is entitled to protection under the Lanham Act – into a word combination that functions more like a public key to 1-800's website. . . . [T]o capitalize on the fame and recognition of 1-800's trademark . . . [defendant] would have needed to put the actual trademark on the list.

Id. at 408-09 & 409 n.11 (adding that "[t]his observation . . . is not intended to suggest that inclusion of a trademark in the directory would necessarily be an infringing 'use.'  We express no view on this distinct issue.").

I find that defendant's participation in Google's AdWords program and defendant's incorporation of plaintiff's marks in its keyword meta tags constitute trademark use under the Lanham Act.  Defendant focuses on the identification aspect of the use requirement, essentially arguing that use of plaintiff's marks in a method invisible to potential consumers precludes a finding of trademark use.  But like the Court in Buying for the Home, I recognize that defendant's use of plaintiff's marks to trigger internet advertisements for itself is the type of use consistent with the language in the Lanham Act which makes it a violation to use "in commerce" protected marks "in connection with the sale, offering for sale, distribution, or advertising of any goods or services," or "in connection with any goods or services."  15 U.S.C. §§ 1114(1) and 1125(a)(1).  Such use is not analogous to "an individual's private thoughts" as defendant suggest By establishing an opportunity to reach consumers via alleged purchase and/or use of a protected trademark, defendant has crossed the line from internal use to use in commerce under the Lanham Act.

II.     Likelihood of Confusion

        Defendants in Buying for the Home sought summary judgment on infringement only on

11

"trademark use" grounds, and their motion was denied.  My analysis here continues because

defendant alternatively has challenged plaintiff's claim on "likelihood of confusion" grounds.

Because "the question of likelihood of confusion is ultimately one of fact," A&H Sportswear,

Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 237 (3d Cir. 2000), I may grant defendant's

motion to dismiss only if defendant can establish that "no reasonable factfinder could find a

likelihood of confusion on any set of facts that plaintiff could prove."  Qwest Commc'ns Int'l v.

Cyber-Quest, Inc., 124 F. Supp. 2d 297, 304 (M.D. Pa. 2000).  I conclude that defendant has

carried this burden.  Even accepting plaintiff's allegations as true – i.e., assuming that defendant

did in fact use plaintiff's marks through Google's AdWords program or in the keyword meta tags

for its website – as a matter of law defendant's actions do not result in any actionable likelihood

of confusion under the Lanham Act.

Likelihood of confusion exists where "consumers viewing the mark would probably

assume that the product or service it represents is associated with the course of a different

product or service identified by a similar mark."  Checkpoint Sys., Inc. v. Check Point Software

Techs., Inc., 269 F.3d 270, 280 (3d Cir. 2001) (citations omitted).  "The marks need not be

identical and proof of actual confusion is not necessary to establish a likelihood of confusion."

First Am. Marketing Corp. v. Canella, 2004 WL 250537, at *4 (E.D. Pa. Jan. 26, 2004) citing

Fisons, 30 F.3d at 477 (emphasis in original omitted).  As plaintiff recognizes, the Court of

Appeals has held that "initial interest confusion is actionable under the Lanham Act."

Checkpoint Sys., 269 F.3d at 292.  Initial interest confusion applies where "similar marks could

ultimately affect a consumer's consideration of the defendant's product as well as affect the

plaintiff's goodwill with its customers." Id. at 293 citing Mobil Oil Corp. v. Pegasus Petroleum

Corp., 818 F.2d 254, 260 (2d Cir. 1987) ("[P]otential purchasers would be misled into an initial

interest in [defendant].  Such initial confusion works a sufficient trademark injury.").

The Court of Appeals, in approving initial interest confusion as probative of a Lanham

Act violation, reasoned that "[w]ithout initial interest protection, an infringer could use an

established mark to create confusion as to a product's source thereby receiving a 'free ride on the

good will' of the established mark." Id. at 294-95 citing Mobil Oil Corp., 818 F.2d at 260

(holding that likelihood that "potential purchases would be misled into an initial interest"

justifies a finding of infringement).  In Checkpoint Systems, the Court of Appeals noted that

other courts have "equated initial interest confusion to a 'bait and switch scheme.'" Id. at 294

citing Dorr-Oliver, Inc. v. Fluid Quip, Inc., 94 F.3d 376, 382 (7th Cir. 1996) ("[T]he Lanham Act

forbids a competitor from luring potential customers away from a producer by initially passing

off its goods as those of the producer's even if confusion as to the source of the goods is

dispelled by the time any sales are consummated.  This 'bait and switch' of producers, also

known as 'initial interest' confusion, will affect the buying decisions of consumers in the market

for the goods, effectively allowing the competitor to get its foot in the door by confusing

consumers." (internal citation omitted)).  Essentially, initial interest protection has extended the

Lanham Act's applicability to pre-sale confusion as well as post-sale confusion.  See id. at 295

(finding that the 1962 amendment to the Lanham Act which deleted the term "purchasers" from

the Act "expanded the reach of the Lanham Act beyond mere purchases to recognize pre-sale

confusion as well as post-sale confusion").

13

Plaintiff argues that initial interest confusion applies to defendant's use of plaintiff's registered marks through Google's AdWords program and in its keyword meta tags.  Though plaintiff cites numerous cases from other jurisdictions that extend initial interest protection to keyword meta tags, plaintiff notes that the Court of Appeals for this Circuit has not done so.  The seminal case supporting plaintiff's position is Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036 (9th Cir. 1999).  In Brookfield, defendant's use of plaintiff's "MovieBuff" mark in its meta tags caused numerous search engines to display a link to defendant's website when users searched the Internet for "MovieBuff."  Id. at 1062.  The United States Court of Appeals for the Ninth Circuit held that, although use of a protected mark in meta tags does not result in confusion as great as use of a protected mark in a domain name, defendant's use of plaintiff's mark still resulted in initial interest confusion because defendant was improperly benefitting from the goodwill plaintiff developed in its mark.  Id.

I respectfully disagree with the Ninth Circuit's conclusion in Brookfield.  The Court asserted that "[w]eb surfers looking for [plaintiff's] "MovieBuff" products who are taken by a search engine to [defendant's website] will find a database similar enough . . . such that a sizeable number of consumers who were originally looking for [plaintiff's] product will simply decide to utilize [defendant's] offerings instead."  Id.  I find this to be a material mischaracterization of the operation of internet search engines.  At no point are potential consumers "taken by a search engine" to defendant's website due to defendant's use of plaintiff's marks in meta tags.  Rather, as in the present case, a link to defendant's website appears on the search results page as one of many choices for the potential consumer to investigate.  As stated

14

above, the links to defendant's website always appear as independent and distinct links on the search result pages regardless of whether they are generated through Google's AdWords program or search of the keyword meta tags of defendant's website.  Further, plaintiff does not allege that defendant's advertisements and links incorporate plaintiff's marks in any way discernable to internet users and potential customers.

Like Buying for the Home, the cases cited by the Ninth Circuit in Brookfield recognized that initial interest confusion must create in consumers confusion as to the source of the goods or services or a misunderstanding as to an association between the mark holder and the mark user. See, e.g., Mobil Oil, 818 F.2d at 260 (finding initial interest protection applied where defendant's use of the term "Pegasus" would cause confusion with plaintiff's mark, a flying horse symbol in the form of a Pegasus, because "potential purchasers would be misled into an initial interest in [defendant]" as a result of such use).  Due to the separate and distinct nature of the links created on any of the search results pages in question, potential consumers have no opportunity to confuse defendant's services, goods, advertisements, links or websites for those of plaintiff. Therefore, I find that initial interest protection does not apply here.  Because no reasonable factfinder could find a likelihood of confusion under the set of facts alleged by plaintiff, I will grant defendant's motion to dismiss.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.G. WENTWORTH, S.S.C. LIMITED | : | CIVIL ACTION |
| PARTNERSHIP | : | |
| | : | |
| v. | : | |
| | : | |
| SETTLEMENT FUNDING LLC d/b/a | : | |
| PEACHTREE SETTLEMENT FUNDING | : | NO. 06-0597 |

## ORDER

AND NOW, this 4th day of January 2007, upon consideration of defendant's motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiff's response, and

defendant's reply thereto, and for the reasons set forth in the accompanying memorandum, it is

ORDERED that defendant's motion is GRANTED and plaintiff's complaint is DISMISSED.

The CLERK OF COURT is DIRECTED to close this case statistically.


s/Thomas N. O'Neill, Jr.
THOMAS N. O'NEILL, JR., J.